# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IRAIDA LEMON<br><br>Plaintiff,<br><br>v.<br><br>PERSONAL HOME CARE, LLC, et al.,<br><br>Defendants. | Civ. Action No. 1:18-212<br>Hon. Richard D. Bennett |
| EFIM FAYER and JELENA JURKOVA,<br><br>Plaintiffs,<br><br>v.<br><br>PERSONAL HOME CARE, LLC, et al.,<br><br>Defendants. | Civ. Action No. 1:18-1276<br>Hon. Richard D. Bennett |

### MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT AND RELEASE OF WAGE CLAIMS

Plaintiffs Iraida Lemon, Efim Fayer, and Jelena Jurkova (**"Plaintiffs"**) and Defendants Personal Home Care, LLC ("PHC"), HomeCentris Personal Care, LLC, HomeCentris Healthcare, LLC, and Matthew Auman (**"Defendants" or, collectively "HomeCentris"**) **(**collectively, the **"Parties"**) by and through their undersigned counsel, respectfully request that the Court approve the attached Settlement Agreement and Release ("Agreement", attached as Exhibit 1) resolving the wage-and-hour claims in the two above-captioned actions under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* and Maryland state law.  The Parties seek this Court's approval of the settlement because claims under the FLSA, such as those released by Plaintiffs in the Agreement, may not be waived or released in this Circuit without approval of the

U.S. Department of Labor or a court. *See* 29 U.S.C. § 216(c); *Taylor v. Progress Energy, Inc.*, 415 F.3d 364, 374 (4th Cir. 2005), *vacated and remanded on other grounds*, 493 F.3d 454 (4th Cir. 2007); *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 476 (D. Md. 2010).

For the reasons stated below, the Parties respectfully request that the Court find that the Agreement is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions" and dismiss with prejudice Plaintiffs' wage-and-hour claims.

## I. BACKGROUND

### A. Procedural History

The *Lemon* action was filed by Plaintiff Iraida Lemon as a putative FLSA collective action and Maryland wage-and-hour class action on January 23, 2018. [*Lemon* ECF No. 1]. On February 15, 2018, an Amended Complaint was filed and Defendants answered on April 5, 2016. [ECF Nos. 5, 7]. Between February and April, with a tolling agreement in effect, counsel for Plaintiff Lemon and Defendants exchanged information regarding (1) Plaintiffs' hours worked and payments received as an employee and as an independent contractor home caregiver, and (2) the factual and legal basis for the independent contractor registry model for home caregiving in the State of Maryland. After unsuccessful arms-length negotiations, on April 10, 2018, Plaintiff Lemon filed a motion for conditional certification of an FLSA opt-in class, which was later withdrawn on May 2, 2018. [*Lemon* ECF Nos. 11, 19, 21]. On May 11, 2018, the *Lemon* action was referred to Magistrate Judge Gallagher for an early settlement conference, which was scheduled for August 27, 2018. [*Lemon* ECF No. 23, 25].

The *Fayer* action was filed by Plaintiffs Efim Fayer and Jelena Jurkova as a putative FLSA collective action and Maryland wage-and-hour class action on May 1, 2018. [*Fayer* ECF No. 1]. Defendants filed their Answer on May 31, 2018. [*Fayer* ECF No. 7]. On June 7, 2018, the Parties entered into a tolling agreement and requested a Magistrate-supervised settlement

conference for the *Fayer* action, which was referred to Magistrate Judge Gallagher on June 8, 2018. [*Fayer* ECF Nos. 12-13]. Magistrate Judge Gallagher scheduled the settlement conference to be held jointly with the *Lemon* action already set for August 27, 2018. [*Fayer* ECF No. 14]. Both cases were stayed, with a status report due in each action within 10 days following the settlement conference. [*Fayer* ECF No. 15].

**B.     Summary of Plaintiffs' Wage Claims**

Plaintiff Lemon was employed by Defendant PHC in an administrative position from June 2016 to June 2017. While employed by PHC, Ms. Lemon also provided home caregiver services to PHC clients under an independent contractor agreement for the period February 26 – October 31, 2017. The Parties agree that Ms. Lemon never worked more than 40 hours as a caregiver in any week, but did work more than 40 hours when combined with her time recorded as an administrative employee. The Parties agree that Ms. Lemon never received any overtime payments related to her home caregiver hours.

During the relevant time period (including any tolling) Plaintiffs Fayer (from April 23, 2015 to August 3, 2017) and Jurkova (from May 1, 2015 to November 11, 2017) provided home caregiver services to PHC clients under independent contractor agreements. The Parties agree that Mr. Fayer and Ms. Jurkova worked more than 40 hours in most weeks and did not receive overtime payments.

Each Plaintiff alleges that she or he was misclassified as an independent contractor home caregiver for Defendants and worked more than 40 hours in workweeks without receiving overtime payments in violation of the FLSA, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab & Empl., § 3-401, *et seq.*, and the Maryland Wage Payment Collection Law ("MWPCL"), Md. Code Ann., Lab & Empl., § 3-501, *et seq.* Plaintiffs allege that Defendants willfully violated their federal and state statutory obligations and seek unpaid overtime,

liquidated damages under the FLSA and MWHL, treble damages under the MWPCL, and reasonable attorneys' fees and costs.

### C.    Summary of Defendants' Position

Defendants dispute Plaintiffs' allegations regarding wage-and-hour violations. Specifically, it contends that Plaintiffs were properly classified as independent contractors under federal and Maryland law.[1]  The non-PHC Defendants also deny that they were joint employers with PHC.  *See, e.g., Lemon* Answer, Defense #7 (ECF No. 7).  Defendants also raise good faith defenses to willfulness and liquidated damages under 29 U.S.C. §§ 259, 260.  *See, e.g., id.*, Defenses #13-14.

PHC operates under a "registry model" – the United States Department of Labor ("DOL") provided the following illustration of such model under its October 1, 2013 Home Care Rule:

> ABC Company advertises as a "registry" that provides potential direct care workers.  The registry conducts a background screening and verifies credentials of potential workers, and assists clients by locating direct care workers who may be able to meet a client's needs.  ABC Company informs Ann, a direct care worker, of the opportunity to work for a potential client. If Ann is interested in the opportunity, she is responsible for contacting the client for more information. Ann is not obligated to pursue this or any other opportunity presented, and she is not prohibited from registering with other referral services or from working directly with clients independent of ABC Company.  The registry does not provide any equipment to Ann, and does not supervise or monitor any work Ann performs.  ABC Company has no power to terminate Ann's employment with a client. ABC Company processes Ann's payroll checks according to information provided by clients, but does not set the pay rate.
> ***In this scenario, Ann is likely not an employee of ABC Company.***

*See* Application of the Fair Labor Standards Act to Domestic Service, 78 FR 60454, 60484 (emphasis added), 2013 WL 5428279 ("10/1/2013 Home Care Rule").  A July 13, 2018 DOL

---

[1]  It is well-settled by state and federal courts that the Maryland Wage and Hour Law is the "State parallel" or "state's equivalent" to the FLSA.  *See, e.g., Newell v. Runnels*, 407 Md. 578, 649 (2009); *Campusano v. Lusitano Constr. LLC*, 208 Md. App. 29, 37 (2012); *McFeeley v. Jackson St. Entm't, LLC*, 47 F. Supp. 3d 260, 267 n.6 (D. Md. 2014).

Wage and Hour Division Field Assistance Bulletin re-affirmed the use of an independent contractor-based registry model for caregivers under certain circumstances. *See* DOL WHD Field Assistance Bulletin No. 2018-14 (July 13, 2018) (available at https://www.dol.gov/whd/FieldBulletins/fab2018_4.pdf).[2]

Maryland law has codified the registry model described by the DOL guidance and issued specific regulations governing the operations of such registries in the home caregiver context. The statutory term adopted by Maryland law to refer generally to home caregiver agencies is "residential service agencies" or "RSAs." *See* Md. Code Ann., Health-Gen. § 19-4A-01(e)(1)-(2). The relevant Maryland regulations for RSAs, Community First Choice ("CFC"), and Community Personal Attendant Services ("CPAS") Program personal care providers expressly contemplate that home caregivers may be independent contractors.[3] Such home caregivers do not require state licenses. *See* COMAR 10.07.05.03; 10.09.20.02 . For CFC and CPAS personal care providers, the State requires the home caregivers to use a telephonic timekeeping system to document their time. COMAR 10.09.20.14. Claims are submitted by the personal care provider and then the State reimburses the provider. *Id.*

---

[2]  The Field Assistance Bulletin states: "Consistent with WHD's longstanding position, a registry that simply facilitates matches between clients and caregivers—even if the registry also provides certain other services, such as payroll services—is not an employer under the FLSA. A registry that controls the terms and conditions of the caregiver's employment activities may be an employer of the caregiver and therefore subject to the requirements of the FLSA." *Id.* at 1.

[3]  *See* COMAR 10.07.05.03.E ("This Chapter does not preclude an [RSA] from operating with independent contractors."); 10.07.05.10A ("An [RSA] shall develop and implement policies and procedures to screen a prospective employee, independent contractor, or contractual employee who will provide services to clients."); 10.09.20.01B(29) (defining "worker" as "an individual who is employed by or contracts with a personal assistance provider agency to provide personal assistance services.").

## II.   LEGAL STANDARD

"A court-approved stipulated judgment or settlement is an exception" to the general rule that the FLSA's "provisions are mandatory and generally are not subject to bargaining, waiver, or modification by contract or settlement." *Navarro v. Eternal Trendz Customs, LLC*, No. TDC-14-2876, 2015 U.S. Dist. LEXIS 24828, at *3 (D. Md. Feb. 27, 2015) (citations omitted). "Such a settlement may be approved provided that it reflects a 'reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching." *Id.* (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).  "*Lynn's Food Stores* and similar cases recognize a role for less-than-full-value compromise in the FLSA settlement process" and "[t]hese compromises reflect the 'many factors [that] may be in play as the parties negotiate.'" *Lopez*, 748 F. Supp. 2d at 478 (quoting *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1227 (M.D. Fla. 2009)).

Although the Fourth Circuit "has not specifically identified the factors to be considered in approving FLSA settlements, district courts in this circuit typically employ the considerations set forth . . . in *Lynn's Food Stores*."  *Navarro*, 2015 U.S. Dist. LEXIS 24828 at *3 (citations omitted); *see also Rivera v. Kantutas Rest., LLC*, No. PWG-17-642, 2018 U.S. Dist. LEXIS 71110, at *3-4 (D. Md. Apr. 27, 2018) (same).  As explained in *Navarro*,

> An FLSA settlement generally should be approved if it reflects "a fair and reasonable resolution of a bona fide dispute over FLSA provisions."  This analysis includes consideration of (1) whether there are FLSA issues actively in dispute; (2) the fairness and reasonableness of the settlement; and (3) the reasonableness of the attorney's fees, if included in the agreement.  These factors are most likely to be satisfied where there is an "assurance of an adversarial context" and the employees are "represented by an attorney who can protect their rights under the statute."

*Navarro*, 2015 U.S. Dist. LEXIS 24828 at *3-4 (quoting *Lynn's Food Stores*, 679 F.2d at 1354) (other citation omitted); *Rivera v. Kantutas Rest., LLC*, 2018 U.S. Dist. LEXIS 71110 at *4

6

(same). There is a "'strong presumption in favor of finding a settlement fair' that must be kept in mind in considering the various factors to be reviewed in making the determination of whether an FLSA settlement is fair, adequate, and reasonable." *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08cv1310 (AJT/JFA), 2009 U.S. Dist. LEXIS 89136, *27 (E.D. Va. June 23, 2009) (quoting *Camp v. Progressive Corp.*, No. 01-2680, 2004 U.S. Dist. LEXIS 19172, at *18 (E.D. La. Sept. 23, 2004), *adopted by* 2009 U.S. Dist. LEXIS 89129 (E.D. Va. Sept. 28, 2009).[4] "These factors are most likely to be satisfied where there is an 'assurance of an adversarial context' and the employees are 'represented by an attorney who can protect their rights under the statute.'" *Rivera v. Dixson*, No. TDC-14-2901, 2015 U.S. Dist. LEXIS 11248, at *3-4 (D. Md. Jan. 29, 2015) (quoting *Lynn's Food Stores*, 679 F.2d at 1354).

### III. THE COURT SHOULD APPROVE THE PARTIES' AGREEMENT

#### A. A Bona Fide Dispute Exists As To The Amount, If Any, Of Unpaid Time

"In determining whether a bona fide dispute over FLSA liability exists, the Court reviews the pleadings, any subsequent court filings, and the parties' recitals in the proposed settlement." *Ellis v. Panco Mgmt. of N.J., LLC*, No. PX-17-310, 2017 U.S. Dist. LEXIS 156079, at *3 (D. Md. Sept. 25, 2017) (citation omitted). Whether a plaintiff is entitled to overtime wages under the FLSA "is a fact-specific inquiry that is frequently at the heart of FLSA litigation." *Id.* at *3-4 (finding bona fide dispute where defendant initially contested plaintiff's position and does not admit liability in the settlement).

As detailed in Section I.C, *supra*, Defendants dispute (both in their Answers and the Agreement) that Plaintiffs are entitled to any unpaid wages. More specifically, Defendants

---

[4] This District Court has cited *Lomascolo* on numerous occasions. *See, e.g., Lopez*, 748 F. Supp. 2d at 478; *Rivera v. Kantutas Rest., LLC*, 2018 U.S. Dist. LEXIS 71110 at *4, and other cases cited herein.

dispute that Plaintiffs were misclassified as independent contractors. Under these circumstances, "there are genuine disputes with respect to all Plaintiffs that support the concept of a negotiated settlement of FLSA claims." *See, e.g., Hernandez v. Choi*, No. TDC-13-3567, 2014 U.S. Dist. LEXIS 1597766, at *8 (D. Md. Nov. 13, 2014); *Rivera v. Dixson*, 2015 U.S. Dist. LEXIS 11248 at *5 (same); *see also Eguizabal v. Hu & Tan, Inc.*, No. PWG-17-614, 2018 U.S. Dist. LEXIS 21410, at *4 (D. Md. Feb. 9, 2018) (finding bona fide dispute where the parties disagreed about whether any violations occurred); *Ellis*, 2017 U.S. Dist. LEXIS 156079 at *3 (bona fide dispute where defendant contested liability initially and in settlement agreement).[5]

### B. The Settlement Is Fair And Reasonable

"In assessing the fairness and reasonableness of the settlement agreement, the following factors should be considered: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of counsel; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential discovery." *Navarro*, 2015 U.S. Dist. LEXIS 24828 at *5-6 (citing *Saman v. LBDP, Inc.*, No. DKC-12-1083, 2013 U.S. Dist. LEXIS 83414, at *8 (D. Md. June 13, 2013)) (internal quotation and citations omitted)); *see also Rivera v. Kantutas Rest., LLC*, 2018 U.S. Dist. LEXIS 71110 at *5 (same).

Here, the "parties devoted a significant amount of time to settlement negotiations which spanned months." *Ellis*, 2017 U.S. Dist. LEXIS 156079 at *4. These negotiations were extensive and involved direct, yet still arms-length, negotiations between the Parties' counsel. While discovery did not formally begin, the Parties also exchanged information informally,

---

[5] Plaintiffs are only entitled to treble damages under the MWPCL if there is no bona fide dispute that payments were due and not made.

including pay and hours information and legal authority regarding the home caregiver registry model. The Parties' counsel also conducted an in-person meeting in the office of Plaintiffs' counsel to further evaluate and discuss these issues, as well as at least five conference calls among counsel. Thus, "the parties had sufficient opportunity to 'obtain and review evidence, to evaluate their claims and defenses[,] and to engage in informed arms-length settlement negotiations with the understanding that it would be a difficult and costly undertaking to proceed to trial of this case.'" *Id.* at *4-5 (quoting *Lomascolo*, 2009 U.S. Dist. LEXIS 89136 at *32). This is particularly true given the need to seek conditional certification under the FLSA and/or class certification under Rule 23, and a likely decertification attempt by Defendants. In other words, it may have been as long as two to three years before trial in these matters.

Further, "[w]hen all parties are represented by counsel of their choice in connection with the negotiations that led to the Settlement, there is a presumption that the Settlement was not the product of fraud or collusion." *Melendez v. Declerq, Inc.*, No. PJM 14-2247, 2016 U.S. Dist. LEXIS 78332, at *13 (D. Md. June 14, 2016) (citing *Lomascolo*, 2009 U.S. Dist. LEXIS 89136 at *32 (citation omitted)). Here, there is an absence of any credible evidence of fraud or collusion between counsel.

Plaintiffs' counsel are experienced in employment litigation and class action litigation, including wage and hour litigation and have recommended that their clients accept and sign the Agreement. Notably, the Agreement contains a narrow release of only wage and wage-related claims and no confidentiality provision. *See* Agreement, ¶ 5.

Finally, Plaintiffs will receive a total of $14,547.93, plus payment of attorneys' fees and costs. *See* Agreement, ¶ 1(a–c). Based on the representations and information of the plaintiffs, together with the hours and payment records provided by Defendants, Plaintiffs' counsel

calculated Plaintiffs' unpaid overtime to amount to be approximately $24,977.12. Plaintiffs' counsel have reviewed the information voluntarily provided by Defendants, and recognize the risk that liquidated damages and Maryland treble damages might not be available due to Defendants' potential good faith and bona fide dispute defenses, as well as the risk that a trier of fact will find Plaintiffs were properly classified as independent contractors. Thus, the recovery falls well within Plaintiffs' counsel's evaluation of their claims. Under these circumstances, including the disputed nature of Plaintiffs' claims and the narrow release provisions, this is a reasonable and fair compromise.

      C.      **The Proposed Attorneys' Fees Are Reasonable**

Where a settlement agreement includes a provision for payment of attorneys' fees, the reasonableness of the award must also "be independently assessed, regardless of whether there is any suggestion that a conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Navarro*, 2015 U.S. Dist. LEXIS 24828 at *7-8 (citing *Saman*, 2013 U.S. Dist. LEXIS 83414, at *8-9 (D. Md. June 13, 2013)) (internal quotation marks omitted)). "[T]here is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Rivera v. Kantutas Rest., LLC*, 2018 U.S. Dist. LEXIS 71110 at *9-10 (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010)).

In this case, the Agreement provides for payment of $50,000 in attorneys' fees and costs. *See* Agreement, ¶ 1(d). This figure is reasonable upon consideration of traditional lodestar calculation of the number of hours "reasonably expended" by counsel multiplied by a "reasonable hourly rate." *See, e.g., Navarro*, 2015 U.S. Dist. LEXIS 24828 at *9 (citing *Robinson v. Equifax Info Servs.*, LLC, 560 F.3d 235, 243 (4th Cir. 2009)) (other citation

omitted). "An hourly rate is reasonable if it is 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Navarro*, 2015 U.S. Dist. LEXIS 24828 at *9 (quoting *Blum v. Stenson*, 465 U.S. 886, 890 n.11 (1984)). This Court is guided by Appendix B of its Local Rules, which establishes rates that are presumptively reasonable for lodestar calculations. *Navarro*, 2015 U.S. Dist. LEXIS 24828 at *9 (citing *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 509 (D. Md. 2000)).

Here, Plaintiffs' principal attorneys report the following billing rates, experience levels, and hours:

| Attorney | Experience | Proposed Rate | App. B Rate (2016) | Hours |
|---|---|---|---|---|
| Judd Millman | 13 years | $325[6] | $225 - $350 | 182.4 |
| Tehila Fink Feldbaum | 1 year | $175 | $150 - $225 | 69.2 |

As shown above, the proposed rates fall within the presumptively reasonable ranges set forth in the Court's Local Rules. The $50,000 allocated to attorneys' fees in the Agreement represents a substantial discount off Plaintiffs' counsel's actual lodestar of $71,390.[7] Further, the attorneys' fees were negotiated separately from Plaintiffs' settlement amounts. Under these circumstances, the agreed-upon amount for attorneys' fees is reasonable and supports Court approval.

---

[6] The undersigned Plaintiffs' counsel, Judd G. Millman, represents that the majority of the work he performs in his legal practice is on behalf of fee-paying clients (*i.e.*, not contingent fee) and that he presently bills fee-paying clients at the rate of $350 per hour. Nonetheless, in matters which involve the potential for a fee petition (such as this matter), the undersigned elects to bill at the reduced rate of $325 per hour in order to defer towards a rate which is more central to the hourly fee range ($225–350 for 9–14 years of practice) as set forth in Appendix B to the Local Rules for an attorney currently possessing his years of practice (13 years).

[7] The total of $71,390 was calculated as follows:
    (1) Judd Millman: (182.4 hours) x ($325 per hour) = $59,280;
    (2) Tehila Fink Feldbaum: (69.2 hours) x ($175 per hour) = $12,110; and
    (3) TOTAL: $59,280 + 12,110 = $71,390.

## IV. CONCLUSION

For the reasons stated herein, the Parties jointly request that the Court approve the Agreement and dismiss all claims with prejudice.

Dated: August 24, 2018.    Respectfully submitted,

/s/ *William Allen*
William Allen
D. Md. Bar No. 16816
ballen@littler.com
Steven E. Kaplan
D. Md. Bar No. 16531
skaplan@littler.com
LITTLER MENDELSON, P.C.
815 Connecticut Avenue, NW, Suite 400
Washington, D.C. 20006
T – 202.842.3400
F – 202.842.0011

ATTORNEYS FOR DEFENDANTS


/s/ *Judd G. Millman*
Judd G. Millman
Federal Bar No. 18212
judd@luchanskylaw.com
LUCHANSKY LAW
606 Bosley Ave., Suite 3B
Towson, MD 21204
T – 410-522-1020
F – 410-522-1021

ATTORNEYS FOR PLAINTIFFS